UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JERRY WHITE,<br><br>        Plaintiff,<br><br>v.<br><br>LISA WALSH, *et al.*,<br><br>        Defendants. | Case No. 3:20-CV-00306-RCJ-CLB<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1]<br><br>[ECF Nos. 21, 25] |

This case involves a civil rights action filed by Plaintiff Jerry White ("White") against Defendants Lisa Walsh ("Walsh") and Ronald Hannah ("Hannah") (collectively referred to as "Defendants"). Currently pending before the Court are two motions. First is Defendants' motion for summary judgment. (ECF Nos. 21, 23, 29.)[2] White responded, (ECF No. 28), and Defendants replied. (ECF No. 31.) The second is White's partial motion for summary judgment. (ECF No. 25.) Defendants responded, (ECF No. 30), and White replied. (ECF No. 32.) For the reasons stated below, the Court recommends that Defendants' motion for summary judgment, (ECF No. 21), be granted and White's partial motion for summary judgment, (ECF No. 25), be denied.

**I.      FACTUAL BACKGROUND**

White is an inmate in the custody of the Nevada Department of Corrections ("NDOC"). The events related to this case occurred while White was housed at Warm Springs Correctional Center ("WSCC") and Northern Nevada Correctional Center ("NNCC"). (ECF Nos. 4, 21.) On September 21, 2019, the Office of the Inspector General ("OIG") began an investigation regarding a relationship between White and a correctional

---

[1] This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2] ECF No. 23 consists of exhibits filed under seal in support of Defendants' motion for summary judgment, ECF No. 21. ECF No. 29 consists of statements authenticating exhibits used in Defendants' motion for summary judgment, ECF No. 21.

officer at WSCC. (ECF No. 21 at 2; ECF No. 23-1 at 2 (sealed).) The correctional officer admitted to the OIG that she had a physical relationship with White and brought him a cell phone while he was in custody. (*Id.*) On the same day, White was placed on "red tag status" pending the OIG's investigation. (ECF No. 21 at 2; ECF No. 21-1.) White was transported from WSCC to NNCC on September 23, 2019, because WSCC did not have proper segregation housing. (*Id.*) White was to remain in administrative segregation ("Ad Seg") pending the outcome of the OIG's investigation. (ECF No. 21 at 3; ECF No. 21-2.) White was then re-classified to "close custody." (ECF No. 21-4.)

On October 3, 2019, White was seen for an initial informal review. (ECF No. 21-5.) White refused to continue the hearing, as it was after the 72-hour window prescribed by AR 507. (*Id.*) White was first seen for a periodic review on November 5, 2019. (ECF No. 21-6.) These reviews should be noted in the NDOC's Nevada Offender Information Tracking System ("NOTIS"), However, the reviewing caseworker, Defendant Hannah, did not do so in this instance. (*Id.* at 3.) Hannah provided a sworn declaration attesting that he held the periodic review. (*Id.*) Hannah declares that, at the time of the periodic review, there was no indication from the OIG that the investigation was completed and therefore White was to remain in Ad Seg. (*Id.* at 3-4.)

The OIG's investigation concluded on December 2, 2019, and White was to be reviewed for a pending institutional transfer. (ECF No. 21-7 at 2.) On December 4, 2019, White was seen for another periodic review. (ECF No. 21-6 at 4.) On the same day, White was removed from Ad Seg. (ECF No. 21-7 at 3.)

II.     **PROCEDURAL HISTORY**

On May 20, 2020, White submitted a civil rights complaint under 42 U.S.C. § 1983 together with an application to proceed *in forma pauperis* for events that occurred while White was incarcerated at WSCC and NNCC. (ECF Nos. 1-1, 4.) On October 20, 2021, the District Court entered a screening order on White's complaint, allowing White to proceed on a single claim for a Fourteenth Amendment due process violation based on the allegations that: (1) he was not provided an initial due process hearing; and (2) he

was not provided subsequent periodic review hearings regarding his placement into Ad Seg. (ECF No. 5.)

Defendants filed their answer on March 30, 2022. (ECF No. 12.) On November 11, 2022, Defendants filed a motion for summary judgment arguing summary judgment should be granted because: (1) White failed to exhaust his administrative remedies[3]; (2) White cannot prove an issue of material fact for either of his claims; (3) Defendants did not personally participate in the alleged constitutional violation; and (4) Defendants are entitled to qualified immunity. (ECF Nos. 21, 23, 29.) White responded, (ECF No. 28), and Defendants replied. (ECF No. 31.) White filed a motion for partial summary judgment on November 23, 2022. (ECF No. 25.) Defendants responded, (ECF No. 30), and White replied. (ECF No. 32.)

### III.   LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim or claims determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

---

[3] Although the Court ultimately finds in favor of Defendants, the Court is particularly troubled by Defendants' argument that White failed to exhaust his administrative remedies. Based on the record before the Court, it appears White attempt to complete the grievance process, but was told that his first level grievance was based upon an issue outside the scope of the grievance process and therefore the grievance was not accepted and no further attempts to submit his grievance would be accepted. (ECF No. 28 at 6, 28, 74.) Thus, it does not appear that administrative remedies were available to White in this case. This is the not the first time the Office of the Attorney General has made troubling arguments related to inmates purported failures to exhaust their administrative remedies. Defendants are cautioned that further disingenuous arguments related to exhaustion will result in sanctions.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477

U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, (1986). The nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

When a *pro se* litigant opposes summary judgment, his or her contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

Upon the parties meeting their respective burdens for the motion for summary judgment, the court determines whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in

the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3). Nevertheless, the court will view the cited records before it and will not mine the record for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party does not make nor provide support for a possible objection, the court will likewise not consider it).

## IV.    DISCUSSION

### A.    Fourteenth Amendment Procedural Due Process

The sole claim at issue in this case is White's claim for a violation of his Fourteenth Amendment right to due process based on his classification and incarceration in Ad Seg during the OIG investigation described above. A Fourteenth Amendment claim for denial of procedural due process involves two elements. First, the Court must determine that the plaintiff possessed a constitutionally protected interest, such that due process protections apply. *See Ingraham v. Wright*, 430 U.S. 651, 672-73 (1977). Second, and if so, the Court must examine the level of due process demanded under the circumstances. *See id.*; see also *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). A due process claim lies only where the plaintiff has a protected interest, and the defendant's procedure was constitutionally inadequate.

#### 1.    Liberty Interest

Under the Due Process Clause, an inmate does not have liberty interests related to prison officials' actions that fall within "the normal limits or range of custody which the conviction has authorized the State to impose." *Sandin v. Conner*, 515 U.S. 472, 478 (1995) (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)). The Clause contains no embedded right of an inmate to remain in a prison's general population. *Id.* at 485–86. Further, "the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983), overruled on other grounds by *Sandin*, 515 U.S. at 472–73.

State law also may create liberty interests. Where segregated housing or other

prison sanctions "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life[,]" due process protections arise. *Sandin*, 515 U.S. at 483–84. What matters is not the label or characterization of the segregation or sanction, but instead, its underlying nature: "[n]o matter how a prisoner's segregation (or other deprivation) is labeled by the prison or characterized by the prisoner, a court must examine the substance of the alleged deprivation and determine whether it constitutes an atypical and significant hardship...." *Hernandez v. Cox*, 989 F.Supp.2d 1062, 1068–69 (D. Nev. 2013).

When conducting the atypical-hardship inquiry, courts examine a "combination of conditions or factors...." *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996). These include: (1) the extent of difference between segregation and general population; (2) the duration of confinement; and (3) whether the sanction extends the length of the prisoner's sentence. *See Serrano*, 345 F.3d at 1078 (citing and discussing *Sandin*, 515 U.S. at 486–87). That a particular punishment or housing placement is more restrictive than administrative segregation or general population privileges is, alone, not enough: even where "the conditions in segregation are worse than those a prisoner will typically encounter in prison, the Court must still consider whether the conditions are extreme enough in nature and duration or whether they will necessarily affect the length of a prisoner's sentence." *Hernandez*, 989 F.Supp.2d at 1069. "Typically," as the Ninth Circuit has stated, "administrative segregation in and of itself does not implicate a protected liberty interest" under the Sandin factors. *Serrano*, 345 F.3d at 1078.

Defendants do not dispute that White's liberty interests were implicated by being placed in Ad Seg pending the outcome of the OIG's investigation. (ECF No. 21 at 12.) Therefore, the Court turns to whether White was afforded the due process to which he was entitled.

**2.    Due Process Procedures**

When a prisoner is placed in Ad Seg, prison officials must, within a reasonable time after the prisoner's placement, conduct an informal, non-adversary review of the

evidence justifying the decision to segregate the prisoner. *See Hewitt*, 459 U.S. at 476, abrogated in part on other grounds by *Sandin*, 515 U.S. at 472; *Mendoza v. Blodgett*, 960 F.2d 1425, 1430 (9th Cir. 1992), abrogated in part on other grounds by *Sandin*, 515 U.S. at 472; *Toussaint v. McCarthy*, 801 F.2d 1080, 1100 (9th Cir. 1986), abrogated in part on other grounds by *Sandin*, 515 U.S. at 472. The Supreme Court has stated that five days is a reasonable time for the post-placement review. *See Hewitt*, 459 U.S. at 477. The prisoner must receive some notice of the charges and be given an opportunity to respond to the charges. *See id*. at 476; *Mendoza*, 960 F.2d at 1430–31; *Toussaint*, 801 F.2d at 1100. The prisoner, however, is not entitled to "detailed written notice of charges, representation of counsel or counsel substitute, an opportunity to present witnesses, or a written decision describing the reasons for placing the prisoner in administrative segregation." *Toussaint*, 801 F.2d at 1100–01 (citations omitted).

After the prisoner has been placed in Ad Seg, prison officials must periodically review the initial placement. *See Hewitt*, 459 U.S. at 477 n.9; *Toussaint*, 801 F.2d at 1101. Annual review of the placement is insufficient, *see Toussaint*, 801 F.2d at 1101, but a court may not impose a 90-day review period where prison officials have suggested a 120-day review period, *see Toussaint v. McCarthy*, 926 F.2d 800, 803 (9th Cir. 1991).

### i.   Informal Review after Placement on Ad Seg

Most of White's complaints stem from alleged violations of AR 507, which outlines the procedures for placement, retention, and release of inmates in Ad Seg. (ECF No. 21-9.) While Defendants concede that AR 507 was not followed in this case, ECF No. 21 at 12, violations of state departmental regulations do not establish federal constitutional violations. *See Case v. Kitsap County Sheriff's Dep't*, 249 F.3d 921, 930 (9th Cir. 2001) (quoting *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) ("[T]here is no § 1983 liability for violating prison policy. [Plaintiff] must prove that [the official] violated his constitutional right ....")). Therefore, the question of whether White was given his due process rights does not turn on whether AR 507 was followed.

Instead, the Court looks for whether White was given an informal, non-adversary

8

1  review of the evidence justifying the decision to segregate him after being placed in Ad
2  Seg. *See Hewitt*, 459 U.S. at 476. Defendants provide authenticated, admissible evidence
3  showing White was provided an initial review of his placement in Ad Seg. The review itself
4  was not completed because White refused to continue, stating he was seen outside of
5  the timeframe outlined in AR 507. (ECF No. 21-5; ECF No. 29-4 at 3.) The Institutional
6  Case Management notes show that he was placed in Ad Seg due to the safety and
7  security of the institution and would remain in Ad Seg pending the outcome of the
8  investigation. (*Id.*) Additionally, White's pleadings make it clear he knew the OIG's
9  investigation was the reason for his placement on Ad Seg. (ECF No. 25 at 3.)

10  The Court takes issue with Defendants' statement that White received an informal
11  review roughly seven days after being placed in Ad Seg. (ECF No. 21 at 12.) White was
12  placed in Ad Seg on September 23, 2019. (ECF No. 21-2, ECF No. 29-4 at 3.) The
13  informal review occurred on October 3, 2019. (ECF No. 21-5, ECF No. 29-4 at 3.) Unless
14  Defendants meant that White was seen seven *business* days after being placed on Ad
15  Seg, that statement is incorrect. The Supreme Court found that review after five days was
16  a reasonable time for post-placement review, which is less than the period of time at issue
17  here. *See Hewitt*, 459 U.S. at 477. However, "[p]rison administrators ... should be
18  accorded wide-ranging deference in the adoption and execution of policies and practices
19  that in their judgment are needed to preserve internal order and discipline and to maintain
20  institutional security." *Id.* at 472 (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)).
21  Therefore, despite what appears to be NDOC's incorrect statement that the informal
22  review took place within seven days, the Court must give deference to the fact that
23  informal review was within a few days after White was placed in Ad Seg. Because of this
24  deference, the Court finds that Defendants have met their burden on summary judgment
25  to show that White was provided the due process owed to him during his placement into
26  Ad Seg. *See Hewitt*, 459 U.S. at 476.

27  Because Defendants have met their burden on summary judgment, the burden
28  shifts to White to provide evidence of a genuine dispute of material fact. *Matsushita Elec.*

*Indus. Co.*, 475 U.S. at 586. White provides evidence of Defendants' failure to follow AR 507. However as previously discussed, AR 507 is not the standard for determining whether Defendants violated White's due process rights. White has not provided evidence to show that the initial review of his placement was insufficient and therefore has not met his burden under summary judgment. (*Id.*)

### ii.   Periodic Review While on Ad Seg

Next, the Court looks for whether White was given periodic reviews of his status while in Ad Seg. *See Hewitt*, 459 U.S. at 477 n.9; *Toussaint*, 801 F.2d at 1101. Annual review of the placement is insufficient, *see Toussaint*, 801 F.2d at 1101, but a court may not impose a 90-day review period where prison officials have suggested a 120-day review period, see *Toussaint v. McCarthy*, 926 F.2d 800, 803 (9th Cir. 1991).

Here, Defendants provide authenticated, admissible evidence showing that White received two periodic reviews of his placement during the two and a half months he was held in Ad Seg. Specifically, White was placed in Ad Seg on September 23, 2019, and reclassified on December 4, 2019. (ECF No. 21-7 at 2; ECF No. 29-4 at 3-4.) White was first seen for a periodic review on November 5, 2019. (ECF No. 21-6.) White was then seen for a second, and final, periodic review on December 4, 2019. (ECF No. 21-7 at 2; ECF No. 29-4 at 4.) These reviews were sufficient to satisfy White's due process guarantees. *See Hewitt*, 459 U.S. at 477 n.9. Defendants have therefore met their burden on summary judgment and the burden shifts to White to provide evidence that creates a genuine dispute of material fact. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. White does not provide evidence disputing that the reviews occurred or that he was not removed from Ad Seg.

Accordingly, because the evidence before the Court shows that White was given both an initial review after placement in Ad Seg and was also given periodic reviews while in Ad Seg, White's procedural due process rights were not violated. Accordingly, the Court recommends that Defendants' motion for summary judgment be granted in its entirety

and White's motion for partial summary judgment be denied.[4]

## V. CONCLUSION

For good cause appearing and for the reasons stated above, the Court recommends that Defendants' motion for summary judgment, (ECF No. 21), be granted, and White's motion for partial summary judgment, (ECF No. 25), be denied.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## VI. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment, (ECF No. 21), be **GRANTED**, and White's motion for partial summary judgment, (ECF No. 25), be **DENIED**.

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** in favor of Defendants and **CLOSE** this case.

**DATED**: February 6, 2023

_____
**UNITED STATES MAGISTRATE JUDGE**

---

[4] Because the Court finds that White's claim fails on the merits, it need not address the other arguments or defenses presented in either Defendants' or White's motions.